IN THE UNITED STATES DISTRICT COURT§
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03182-CMA-MEH

ARIN VANDERHEYDEN,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INS. CO.,

    Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**

    Plaintiff has moved to add a claim for exemplary damages. ECF 62. The Motion is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. For the following reasons, the Court recommends that the Motion be denied.

### BACKGROUND

    Plaintiff purchased from Defendant an automobile insurance policy (denoted by the policy numbers C08-06A and C08-06B) with an uninsured/underinsured motorist ("UIM") benefit of $250,000 per person/per occurrence. ECF 3 at ¶¶ 8-13. This was the policy that was the subject of his original Complaint. *Id*. at ¶ 11. Plaintiff was involved in two motor vehicle accidents, the first in June 2016 and the second in February 2019. *Id*. at ¶¶ 14, 19. For both accidents, Plaintiff submitted UIM claims against the policy. *Id*. at ¶¶ 49, 71. Defendant did not resolve those claims properly, Plaintiff complains.

    On October 1, 2020, Plaintiff sued Defendant. First, Plaintiff claimed that Defendant had breached the policy contract. Second, he alleged that Defendant handled the claims in bad faith

which he expressed in terms of both the common law tort of bad faith and a violation of Colo. Rev. Stat. §§ 10-3-1104, -1115, -1116.

Not discussed in the original Complaint was the automobile insurance policy (B07-06B) that Lauren Anthony purchased from Defendant. It had $250,000 UIM benefit available to both her and a "Resident Relative." ECF 51 at ¶¶ 11-12, 17. Plaintiff and Ms. Anthony are not formally married. However, as later pleaded in the Amended Complaint (ECF 51) and discussed in the present Motion (ECF 62), Plaintiff contends that they are common law spouses, and as such, Plaintiff is a covered "Resident Relative" under Ms. Anthony's policy. Their two policies provide him a $500,000 UIM benefit, he argues.

Plaintiff says that Defendant knew of their common law marriage as early as May 2013 when he and Ms. Anthony sought "a comprehensive insurance package . . . including homeowners' insurance and vehicle insurance for their two motor vehicles" from Defendant's agent. ECF 62 at 3. Following both accidents, Defendant's adjuster informed Plaintiff's counsel that the policies together provide UIM coverage of $500,000 per person for each accident. *Id*. After the commencement of this litigation, Defendant's counsel confirmed that same coverage amount. *Id*. at 3-4.

Defendant deposed Plaintiff on June 18, 2021, at which time Plaintiff described himself as "engaged" to Ms. Anthony with an anticipated but not yet scheduled wedding date. Plaintiff explained that he was not yet actually married to Ms. Anthony. *Id*. at 4-6. Plaintiff now clarifies that he was discussing only the topic of official marriage. *Id*. at 6-7.

Four and a half months after the deposition, on November 1, 2021, Defendant informed Plaintiff's counsel that it no longer regarded Ms. Anthony's policy to cover him as a "Resident

2

Relative." Plaintiff adds that Defendant's change of position also occurred four months after the close of discovery. *Id*. at 7.

The Final Pretrial Conference was held on November 8, 2021. At that time, as reflected in the parties' proposed Final Pretrial Order, Defendant stipulated to the existence of only $250,000 UIM coverage under Policy No. C08-06A (that Plaintiff purchased for himself). ECF 46 at 4-5. In light of the new coverage dispute, I declined to enter their proposed order and instructed Defendant to state its coverage position in writing by November 15, 2021. ECF 47. Defendant confirmed in writing that it no longer regarded Ms. Anthony's policy as a source of additional coverage for Plaintiff, but it gave no explanation for its new position. ECF 62 at 8. On November 23, 2021, I granted Plaintiff leave to amend his complaint and move for partial summary judgment. I also reopened discovery and set a second Final Pretrial Conference. ECF 50.

Plaintiff filed his Amended Complaint on November 24, 2021. ECF 51. In it, Plaintiff pleaded the existence of $500,000 in UIM coverage under both his and Ms. Anthony's policies on the basis of their common law marriage. *Id*. at ¶¶ 11-17, 108. He added allegations about Defendant's initial concession of combined coverage which had "induced [him] to believe that he had UIM coverage in the amount of $500,000 [for both accidents]." *Id*. at ¶ 108. Defendant then made a last-minute change of position without an adequate inquiry or explanation. *Id*. at ¶¶ 113-117. Plaintiff repeated the same breach of contract and bad faith causes of action from the initial Complaint.

Afterwards Plaintiff continued to confer with Defendant about the coverage matter "in an effort to avoid unnecessary delay and litigation expenses," but he also accused Defendant of taking an unjustified position for the purpose of creating obfuscation and unnecessary litigation burden. ECF 62 at 9-10. Plaintiff had several objections to the course of the renewed discovery, and I

3

scheduled a Discovery Conference for February 24, 2022 to hear them. On that day, Defendant withdrew its coverage denial and agreed with Plaintiff that he "was common law married at the time of the subject accidents, even though he testified during his deposition that he was engaged to Ms. Anthony, rather than married." *Id*. at 12.

Defendant's concession rendered moot the need for Plaintiff to move for summary judgment. Instead, I gave Plaintiff leave to file a motion to amend the complaint and a motion for attorney's fees. ECF 56. That resulted in the filing of the instant Motion to Amend Complaint to Add Claim for Exemplary Damages, but Plaintiff "opted not to seek sanctions for [Defendant's] frivolous and groundless coverage determination and delay in producing key documents" (ECF 62 at 13 n.1).

## **LEGAL STANDARDS**

Plaintiff seeks to add to his Amended Complaint a claim of exemplary damages concerning Defendant's last-minute denial of coverage under Ms. Anthony's policy. In Colorado, exemplary or punitive damages are available only by statute. *Stamp v. Vail Corp.*, 172 P.3d 437, 447 n.12 (Colo. 2007) (en banc) (citing *Kaitz v. Dist. Court*, 650 P.2d 553, 556 (Colo. 1982)). Plaintiff seeks to amend under Colorado's general exemplary damages provision, Colo. Rev. Stat. § 13-21-102(1). Subsection (1.5)(a) of the statute provides:

> A claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue. After the plaintiff establishes the existence of a triable issue of exemplary damages, the court may, in its discretion, allow additional discovery on the issue of exemplary damages as the court deems appropriate.

Colo. Rev. Stat. § 13-21-102(1.5)(a).

Exemplary or punitive damages are only appropriate if "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). The statute defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others." Colo. Rev. Stat. § 13-21-102(1)(b). Thus, for an amendment seeking exemplary damages to be proper, the Court must find Plaintiff establishes prima facie proof of a triable issue that Defendant purposefully behaved in a dangerous, heedless and reckless manner "without regard to consequences, or of the rights and safety of others." *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1081 (Colo. 2011) (en banc).

"A determination of whether the plaintiff has established prima facie proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Ferrer v. Okbamicael*, 390 P.3d 836, 849 (Colo. 2017). "The existence of a triable issue on punitive damages may be established through discovery, by evidentiary means, or by an offer of proof." *Leidholt v. Dist. Court in and for the City and Cnty. of Denver*, 619 P.2d 768, 771 (Colo. 1980). A plaintiff must articulate "[a] reasonable likelihood that the issue will ultimately be submitted to the jury for resolution" to demonstrate the requisite prima facie proof of a triable issue. *Id*. When evaluating motions to add exemplary damages, courts should view the evidence in the light most favorable to the moving party. *Colo. & Santa Fe Real Estate Co. v. Hartford Cas. Ins. Co.*, No. 10-cv-00405-MSK-KMT, 2010 WL 3714751, at *2 (D. Colo. Sep. 14, 2010) ("At this stage of the litigation, the court is concerned with only whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a *prima facie* case"); *see also Am. Economy Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *4 (granting a motion

to amend for exemplary damages when the evidence is viewed in the light most favorable to the moving parties).

## ANALYSIS

Plaintiff seeks exemplary damages for what he characterizes as Defendants' "arbitrary," "incomplete[,] and self-serving coverage position change" as well as for Defendant's inadequate investigation of coverage. ECF 62 at 13. He submits the report of Michael Rosenberg, Esq., his insurance bad faith expert, who opines that:

> [Defendant's coverage] conduct in this case fails to meet applicable insurance industry norms and standards and exposes the insurer to an award of penalties and attorney's fees under C.R.S. § 10-3-1115 and 1116, as well as exemplary damages pursuant to C.R.S. § 13-21-102.

*Id*. at 13. Mr. Rosenberg furthers that it was "ridiculous" for Defendant to rely solely on Plaintiff's deposition testimony when it decided to deny him the benefit of Ms. Anthony's policy when Defendant already knew that Plaintiff and Ms. Anthony were common law married, had combined their households, and had paid a civil union endorsement premium. *Id*. at 14.

Colorado recognizes common law marriage. In 1987, the Colorado Supreme Court defined it as (1) cohabitation with (2) a general understanding or reputation among persons in the community in which the couple lives that the parties hold themselves out as husband and wife. *People v. Lucero*, 747 P.2d 660, 665 (Colo. 1987). They were the two factors that *Lucero* regarded as most clearly indicative of a couple's intention to be married. *Id*. Specific behaviors that *Lucero* listed as relevant to the determination included shared finances, joint tax returns, joint property ownership, and use of the husband's surname by the wife and their children. *Id*. In 2021, the Colorado Supreme Court refined the test for a common law marriage as (1) "the mutual consent or agreement of the couple to enter the legal and social institution of marriage" (2) "followed by conduct manifesting that mutual agreement." *Hogstett v. Neale*, 478 P.3d 713, 715 (Colo. 2021).

6

A couple's *intention* to be in a marital relationship can be shown either by evidence of an express agreement or inferred from their conduct. The *Lucero* factors remain relevant, but *Hogstett* cautioned that no single factor is dispositive when inferring marital intent from conduct. Instead, it depends on the totality of the circumstances and context. *Id*.

In other words, Colorado law regards a couple as being in a common law marriage if they consider themselves married and hold themselves out as such to the public. Notably, Plaintiff does not contend that his deposition testimony is wholly irrelevant to the inquiry. Instead, he faults Defendant for not asking him about common law marriage specifically. While one reading of the deposition exchange reasonably suggests Plaintiff was speaking only in regards to an "official" marriage—which is the interpretation he advances in his Motion—another equally reasonable reading is that Plaintiff denied being "married" because he did not personally regard his relationship with Ms. Anthony in that way. Defendant furthers that the record is not as definitive about their relationship as Plaintiff's Motion implies. It points out that Plaintiff filed his own individual tax return, and he described himself as single and Plaintiff as his girlfriend in medical records. Defendant says that it relied on Plaintiff's representations to it that he and Ms. Anthony had a common law marriage until the deposition prompted an inquiry.

Indeed, Plaintiff does not reject the legitimacy of the inquiry itself. The Court adds that it was Plaintiff's own sworn testimony that precipitated it, on a matter for which how he holds his relationship out to others is dispositive. Consequently, Plaintiff does not plead a prima facie case of willful and wanton misconduct simply by Defendant's act of considering whether he in fact qualified as a "Resident Relative" under Ms. Anthony's policy.

Rather, as Plaintiff clarifies in his Reply, his objection is that Defendant conducted an inadequate and unfair investigation before denying coverage and purposely did so in a way to

7

disadvantage his rights. ECF 68 at 2. Plaintiff complains that Defendant denied coverage based on his deposition testimony alone. In other words, Plaintiff contends that Defendant should have undertaken the record review before denying coverage, but in practical effect, that is what happened. At some point, Defendant would have had to inform Plaintiff why it now wanted to investigate coverage after earlier conceding it.

Even if not ultimately determinative, Plaintiff cannot dispute the role of his own deposition as the precipitating factor, a development which was beyond Defendant's control. What was within Defendant's control, by contrast, was the timing. Plaintiff complains about the significant gap in time between his deposition (on June 18, 2021) and the denial of coverage (on November 8, 2021). Why it took Defendant four months to react to Plaintiff's deposition testimony is unclear. However, Defendant's change in position did not unduly prejudice Plaintiff because I extended the relevant pre-trial deadlines to create room to investigate the matter. Plaintiff complains that Defendant was unresponsive and noncooperative during the reopened discovery period, and he disagrees that Defendant needed until February 24, 2022 to complete its consideration of the matter. Ultimately, it was resolved in Plaintiff's favor before substantive motion practice.

Plaintiff's grievance therefore focuses on *litigation*-related actions. Plaintiff argues that it may seek exemplary damages for an *insurer's* actions taken *after* the commencement of a lawsuit. Even if Colorado case law leaves open the potential for such liability, Plaintiff does not show how it is available here under the facts of this particular situation. In *Dale v. Guaranty Nat'l Ins. Co.*, 948 P.2d 545 (Colo. 1997), the Colorado Supreme Court explained that a bad faith claim is expansive enough to include within its scope an insurer's misconduct after the arbitrator's ruling when it paid the award in an unreasonable and harassing way that created still more delay. The "determination of willful and wanton conduct," by comparison, is limited in scope to those events

that occurred before the arbitration, *id*. at 552, although in reference to a willful and wanton claim from a statute different than what Plaintiff uses here. The case of *Tait v. Harford Underwriters Ins. Co*., 49 P.3d 337 (Colo. App. 2001) affirmed a trial court's use of an insurer's litigation conduct to increase the amount of punitive damages that the jury already had awarded. Although most of the reasons given for that increase were attributable more to its attorneys' conduct in defending the case and delaying the progress of litigation, the trial court noted how the insurer also had delegated to its attorneys many of its own continuing obligations to the insured. *Id*. at 342-43. The case of *Coors v. Security Life of Denver Ins. Co*., 112 P.3d 59 (Colo. 2005) also concerned a trial court's post-trial increase of a punitive damages award for behavior during the pendency of the litigation. The trial court in *Coors* found that the insurer had exacerbated its misconduct by failing to reveal relevant information during the discovery phase of the litigation. *Id*. at 67.

Plaintiff does not plead misconduct by Defendant of the kind analogous to the above cases. For one, the coverage denial does not relate to the misconduct that Plaintiff alleges occurred before he filed this lawsuit, and thus, there is no continuation effect. Second, it was an act by Plaintiff that prompted the coverage denial. Third, an investigation into the matter did occur during the pretrial phase of the litigation, and it resulted in Defendant's concession of coverage.

By focusing on litigation-related activity, Plaintiff's grievance also implicates Defendant's *attorneys* more so than Defendant. Plaintiff emphasizes how he is not alleging "any bad faith, fraud, or willful and wanton conduct by [Defendant's] attorneys," (ECF 68 at 2), but he makes no prima facie showing of how Defendant itself was the responsible actor. Merely framing the exemplary damages allegations in reference to Defendant rather than its counsel is insufficient alone; the substance of the allegation remains relevant. Moreover, by shifting focus from the acts of Defendant's attorneys to the Defendant itself, Plaintiff implicitly concedes the preclusive effect

9

of *Parsons v. Allstate Ins. Co.*, 165 P.3d 809 (Colo. App. 2007). *Parsons* added to the discussion about post-complaint misconduct that *Dale*, *Tait*, and *Coors* had begun, specifically the concern about holding an insurer's attorney liable for acts taken in the course of litigation. *Parsons* emphasized the need for an insurer to be able to vigorously pursue legitimate defenses, and it restricted the ability to use an attorney's post-complaint litigation conduct as part of a bad faith theory. *Id.* at 818-19.

The Court notes that Plaintiff is not wholly without a means for relief for any increased expense that Defendant's temporary denial of coverage caused him. Plaintiff already has amended his complaint to include allegations regarding this incident, and he asserts two theories of insurer bad faith for which he seeks to recover "additional costs in litigation" (ECF 51 at ¶ 147(a)) and fees, costs, and litigation expenses (*id.* at ¶ 153).

## **CONCLUSION**

Plaintiff does not meet the standard for adding an exemplary damages claim under Colorado law for Defendant's temporary denial of coverage under Ms. Anthony's policy. There is an insufficient prima facie showing how either Defendant itself or its attorneys denied coverage with the requisite degree of culpability.

Accordingly, this Court respectfully recommends[1] that Plaintiff's Motion to Amend Complaint to Add Claim for Exemplary Damages [filed April 21, 2022; ECF 62] be **denied**.

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after

Entered and dated at Denver, Colorado, this 8th day of June, 2022.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).